**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JUAN MORALES,

                      Plaintiff,

     v.

OFFICER TRAVIS MAXWELL,
in his individual capacity, and OFFICER
FREDERICK BENDER, in his individual
capacity,

                      Defendants.

Civ. Action No. 21-07263 (FLW)

**OPINION**

**<u>WOLFSON, Chief Judge</u>:**

      Plaintiff Juan Morales ("Plaintiff") brings this action under 42 U.S.C. § 1983 alleging that defendants, Officers Travis Maxwell and Frederick Bender ("Defendants"), violated his constitutional rights while arresting him during an incident in Trenton, New Jersey. Plaintiff alleges that Defendants arrested him unlawfully after he shouted a profanity while recording the officers executing another arrest near his home. In his Amended Complaint, Plaintiff brings claims for retaliatory arrest in violation of the First Amendment (Count One), a violation of the Equal Protection Clause of the Fourteenth Amendment (Count Two), and violations of the Fourth Amendment based on unlawful arrest (Count Three), excessive force (Count Four), and failure to intervene (Count Five). Defendants move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (the "Motion"). For the reasons set forth herein, Defendants' Motion is **GRANTED** in part and **DENIED** in part. The Motion is denied with respect to Counts One through Four, and the Motion is granted with respect to Count Five, which is dismissed without prejudice. Consistent with

this Opinion, Plaintiff may replead Count Five in a second amended complaint.

## I.        BACKGROUND AND PROCEDURAL HISTORY

The relevant facts are derived from Plaintiff's Amended Complaint and assumed as true for the purposes of this motion.

On April 18, 2019, at approximately 10:30 p.m., Plaintiff was standing outside his mother-in-law's house in Trenton, New Jersey, when his brother, Javier, approached from around the corner. Am. Compl. ¶ 10. Shortly thereafter, officers from the Trenton Police Department, including Officers Travis Maxwell ("Officer Maxwell") and Frederick Bender ("Officer Bender"), placed Javier and another individual under arrest, and Plaintiff began filming the encounter. *Id.* ¶¶ 11–12, 19.[1] Plaintiff was standing with a group of observers. *Id.* ¶ 13. Officer Maxwell approached the group "aggressively" and told them to "Disappear. Now." *Id.* When one observer told Officer Maxwell that the group was not obliged to leave, Officer Maxwell directed the group to "Go stand over there, now." *Id.* ¶¶ 14–15. Officer Maxwell explained, "You not listening is illegal," although the group was allegedly complying with Officer Maxwell's directions to stand away from the area where the officers were executing an arrest. *Id.* ¶ 16. Officer Maxwell pointed to an area that was further from where the group was standing and stated, "You can videotape over there." *Id.* Plaintiff allegedly responded, "I live right here," pointing to the area where he was standing. *Id.* ¶ 17.

Officer Maxwell returned to the area where officers had detained Javier and the other individual. *Id.* ¶ 19. Plaintiff shouted to Javier, "What are they bagging you for?" *Id.* ¶ 20. Officer

---

[1] As an exhibit to his Opposition, Plaintiff filed a copy of the video he recorded, which will ultimately shed light on whether Plaintiff's claims are viable. However, Plaintiff did not submit the video with his Amended Complaint, and the Amended Complaint does not cite to the video or rely on it in framing Plaintiff's allegations. Even though I cannot consider the video on this Motion, *see In re Burlington Coat Factory Sec. Litig.*, 114 F. 3d 1410, 1426 (3d Cir. 1997), the video largely supports the allegations in the Amended Complaint.

Maxwell allegedly became "irate" and returned to the group of bystanders, who were still standing aside as instructed. *Id.* ¶ 21. Officer Maxwell told the group, "We're not going to stand out here and debate with you" and that "If you obstruct the investigation one more time, you're going to jail." *Id.* ¶¶ 21–22.

As other officers led Javier toward a police car, Officer Maxwell retrieved what appeared to be a bag containing a white substance from under the vehicle next to which Javier had been standing. *Id.* ¶ 23. Plaintiff shouted an objection that the officers had unfairly attributed the bag to Javier, to which Officer Maxwell responded: "You just videoed it. You watched me go over and pick it up off the ground." *Id.* ¶¶ 24–25. Plaintiff insisted that the officers could not "pin" the bag on Javier given that, according to Plaintiff, the bag was not on the ground prior to Javier's arrest. *Id.* ¶ 26. In response, Officer Maxwell allegedly "became aggressive," approaching Plaintiff and getting "very close to his face." *Id.* ¶ 27. Plaintiff allegedly told Officer Maxwell "to get away from him," in response to which Officer Maxwell allegedly moved closer to Plaintiff's face and directed: "You're going to stand over there like I told you." *Id.* ¶¶ 28–29. Plaintiff objected, stating that he was standing on his own property—the front porch of his mother-in-law's home—to which Officer Maxwell responded: "Do you think that matters to me? I'm going to get up there and lock you up." *Id.* ¶¶ 30–31. When Plaintiff asked Officer Maxwell the basis upon which the officer would arrest Plaintiff, Officer Maxwell responded: "For acting improper." *Id.* ¶ 32. Plaintiff responded that he was "not acting improper" but was rather "just recording." *Id.* ¶ 33.

Officer Maxwell then walked away and told Plaintiff, "You can record all you want." *Id.* ¶ 34. Plaintiff responded that he would take the recording to his "lawyer's office tomorrow" and said to Officer Maxwell, "Fuck you." *Id.* ¶ 35. Officer Maxwell was allegedly standing 10-to-15 feet away from Plaintiff. *Id.* ¶ 36. After Plaintiff cursed at Officer Maxwell, Officers Maxwell and

Bender allegedly "began sprinting after [Plaintiff]." *Id.* ¶¶ 36–37.[2] Officer Bender knocked Plaintiff to the ground, and Officer Maxwell "punched [Plaintiff] repeatedly." *Id.* ¶¶ 38–39, 65.

The officers arrested Plaintiff and charged him with three offenses: improper behavior, N.J.S.A. 2C:33-2(a); obstructing the administration of the law, N.J.S.A. 2C:29-1; and resisting arrest, N.J.S.A. 2C:29-2. *See id.* ¶ 40. When Plaintiff arrived at the police station, the sergeant in charge of the station allegedly directed the officers to take Plaintiff to the hospital because he was so "heavily bloodied and bruised." *Id.* ¶ 41. The officers allegedly told Plaintiff that "[t]hings would get much worse for him" if he filed a complaint about their actions. *Id.* ¶ 42. Plaintiff nevertheless filed a complaint against Officer Maxwell based on his allegedly violent actions against Plaintiff on April 18, 2019. *Id.* ¶ 43. As of the date Plaintiff filed his Amended Complaint—April 15, 2021— he allegedly had not received any update concerning the charges against him since October 2020, and had received no notice of a court date. *See id.* ¶ 44.

Aside from the events on April 18, 2019, Plaintiff alleges that he has filmed Trenton police officers executing arrests on previous occasions due to his concern about abuse and overreach. *Id.* ¶ 47. He alleges that certain officers, including Officers Maxwell and Bender, resent that Plaintiff had filmed their encounters, and that officers in the Trenton City Police Department sent an internal memo warning that Plaintiff may film them. *Id.* ¶ 49. Plaintiff alleges that he learned of the internal memo from Officer Samuel Santiago of the Trenton City Police Department. *Id.* ¶ 50.

On March 30, 2021, Plaintiff filed a complaint in this Court, naming the City of Trenton, Officer Maxwell, Officer Bender, and Officer Christopher Hutton as defendants. ECF No. 1. Plaintiff filed an Amended Complaint as of right on April 15, 2021, naming as defendants only

---

[2] From this point forward, nothing is visible on the video, and the audio continued recording until approximately the time when the officers knocked Plaintiff down.

Officers Maxwell and Bender. ECF No. 5. The Amended Complaint asserts the following causes of action, which Plaintiff brings under 42 U.S.C. § 1983: Count One alleges that Officers Maxwell and Bender unlawfully arrested Plaintiff in retaliation against his exercise of the right to free speech protected by the First Amendment of the U.S. Constitution; Count Two alleges that Officers Maxwell and Bender violated the Equal Protection Clause of the Fourteenth Amendment by discriminating against Plaintiff for exercising his right to free speech; Count Three alleges that Officers Maxwell and Bender violated the Fourth Amendment by arresting Plaintiff without a warrant supported by probable cause; Count Four alleges that Officers Maxwell and Bender violated the Fourth Amendment by using excessive force while arresting Plaintiff; and Count Five alleges that Officer Bender unlawfully failed to intervene when Officer Maxwell began punching Plaintiff during the arrest. Plaintiff brought the action against Officers Maxwell and Bender in their individual capacities, seeking monetary damages and attorneys' fees.

On August 13, 2021, Defendants filed an Answer to the Complaint, ECF No. 20, and on August 18, 2021, Defendants filed a Motion to Dismiss the Complaint pursuant to Rule 12(c) of the Civil Rules of Civil Procedure. ECF No. 22. However, on September 14, 2021, Defendants filed a motion to withdraw the Motion to Dismiss, ECF No. 27, and on the same day Defendants timely filed an Answer to the Amended Complaint, ECF No. 26, as well as a Motion to Dismiss the Amended Complaint pursuant to Rule 12(c). Plaintiff filed his Opposition on October 4, 2021, ECF No. 30, and Defendants filed their Reply on October 11, 2021. ECF No. 31.

## II.    LEGAL STANDARD

A defendant may move to dismiss a complaint for failure to state a claim before or after filing an answer. *See Hackensack Riverkeeper, Inc. v. Delaware Ostego Corp.*, 450 F. Supp. 2d 467, 484 (D.N.J. 2006) (citing Fed. R. Civ. P. 12(b)(6), (c)). When moving to dismiss after filing an answer, the defendant must move for judgment on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure. *Hackensack Riverkeeper*, 450 F. Supp. 2d at 484; Fed. R. Civ. P. 12(c), (h)(2).

The standard governing a motion for judgment on the pleadings "'based on the defense that the plaintiff has failed to state a claim'" is the same standard "'that appl[ies] to a Rule 12(b)(6) motion.'" *See Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Revell v. Port Auth. of NY, NJ*, 598 F.3d 128, 134 (3d Cir. 2010)). A court must grant a Rule 12(c) motion "if the movant establishes that 'there are no material issues of fact, and he is entitled to judgment as a matter of law.'" *Zimmerman*, 873 F.3d at 417 (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)). The court will "accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Zimmerman*, 873 F.3d at 417 (citing *Allah v. Al–Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000)).

Under Rule 12(b)(6), a court may dismiss an action if a plaintiff fails to state a claim upon which relief can be granted. *Id.* When evaluating a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether a complaint is plausible, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court "takes note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court identifies allegations that, "because they are no more than conclusions, are not entitled to the

assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 679). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago*, 629 F.3d at 131 (quoting *Iqbal*, 556 U.S. at 680). This is a "context-specific task that requires the [ ] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

Plaintiff brings this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("section 1983"). Section 1983 provides that "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured" in an appropriate action. 42 U.S.C. § 1983. To state a claim under section 1983, Plaintiff must plausibly allege that (1) Defendants are "person[s]" who were "acting under color of state law" at the time of the alleged violations, and (2) Defendants' "conduct deprived [Plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011). Here, there is no dispute that each defendant qualifies as a "person" under section 1983 or that they were "acting under color of state law" during the encounter on April 18, 2019. The parties only dispute whether Defendants deprived Plaintiff of a constitutional right.

Defendants move to dismiss each count. Because the grounds on which Defendants move to dismiss the First Amendment retaliation claim in Count One turn on whether Defendants had probable cause to arrest Plaintiff, which is the primary issue underlying Plaintiff's unlawful arrest claim in Count Three, I will address Count Three first, followed by Counts One, Two, Four, and Five. Defendants also assert that the doctrine of qualified immunity bars Plaintiff's First Amendment retaliation claim in Count One. *See* ECF No. 28-1 at 18–21.  However, Defendants do not assert

qualified immunity—let alone explain why the doctrine applies—with respect to Counts Two, Three, Four, or Five. I will therefore only address Defendants' qualified immunity defense as pertains to Count One.[3]

### A.      Count Three: Unlawful Arrest

"'To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause.'" *Williams v. City of York, Pa.*, 967 F.3d 252, 263 (3d Cir. 2020) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)). "'[P]robable cause exists if there is a fair probability that the person committed the crime at issue.'" *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016) (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)) (quotations omitted). That determination requires courts to "'examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause.'" *Wesby*, 138 S. Ct. 586. "'While probable cause to arrest requires more than mere suspicion, the law recognizes that probable cause determinations have to be made on the spot under pressure and do not require the fine resolution of conflicting evidence.'" *Williams*, 967 F.3d at 263 (quoting *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000)). And "an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *Wesby*, 138 S. Ct. at 584 n.2.

Here, Plaintiff was charged with disorderly conduct, N.J.S.A. 2C:33-2, obstructing administration of law, N.J.S.A. 2C:29-1, and resisting arrest, N.J.S.A. 2C:29-2. I will therefore

---

[3] In their Answer, Defendants assert qualified immunity as an affirmative defense, *see* ECF No. 20 at 12, but they do not advance any specific legal arguments pertaining to qualified immunity other than the points raised concerning Count One in their Motion.

address whether the officers had probable cause to arrest Plaintiff under each statute.[4]

     *1.    Disorderly Conduct*

New Jersey's disorderly conduct statute contains two offenses: "[i]mproper behavior," N.J.S.A. 2C:33-2(a), and "[o]ffensive language," N.J.S.A. 2C:33-2(b). In their Motion, Defendants do not specify which of these offenses provided the basis for probable cause, although papers attached to their Reply indicate that Plaintiff was charged under N.J.S.A. 2C:33-2(a). *See* ECF No. 31-3 at 3. Nevertheless, because "an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking," *Wesby*, 138 S. Ct. at 584 n.2, I will address whether Defendants had probable cause to arrest Plaintiff for each offense.

     a)    Improper Behavior

To convict a defendant for "[i]mproper behavior," the State must prove that the defendant (1) "intended to cause public inconvenience, public annoyance, or public alarm," or created "a reckless risk thereof" (2) by "[e]ngaging in fighting or threatening, or in violent or tumultuous conduct," or by "[c]reating a hazardous or physically dangerous condition by any act which serves no legitimate purpose of the actor." *State v. Carter*, No. 09-017, 2012 WL 1605188, at *5 (N.J. Super. Ct. App. Div. May 9, 2012); *State v. Stampone*, 341 N.J. Super. 247, 254 (App. Div. 2001); N.J.S.A. 2C:33-2(a). Here, based on Plaintiff's allegations, he did not engage in any "fighting," "threatening," or "violent conduct" before the officers initiated his arrest. Probable cause therefore turns on whether

---

[4] To the Court's knowledge, Plaintiff has not been convicted on any of these charges. Accordingly, *Heck v. Humphrey*, 512 U.S. 477 (1994), does not appear to bar Plaintiff's claims, which could "impugn the validity" of such a conviction. *See Gilles v. Davis*, 427 F.3d 197, 208–09 (3d Cir. 2005) ("Under *Heck*, a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings."). And because Defendants do not raise *Heck* as a defense, the Court would not reach the issue on this Motion even if a conviction were in place. *See Lenart v. City of Wildwood*, 2018 WL 1981476, at **4–5 (D.N.J. Apr. 27, 2018) (citing *Bolick v. Sacavage*, 617 F. App'x 175, 177 (3d Cir. 2015)) (observing that *Heck* is a "non-jurisdictional" defense).

Plaintiff engaged in "tumultuous conduct."

The "definitional parameters" of "tumultuous conduct" are difficult to "ascertain" based on the text of the statute, and New Jersey courts look to dictionary definitions for guidance. *See Stampone*, 341 N.J. Super. at 255. Under one definition, "tumult speaks in terms of a disorderly and violent movement, agitation or milling about of a crowd, usually with great uproar and confusion of voices, a noisy and turbulent popular uprising, a riot." *Id.* (citing *Webster's Third New International Dictionary* 2462 (1993)). Tumultuous may also mean "'as marked by tumult,' 'tending or disposed to cause or excite a tumult,' and 'marked by violent or overwhelming turbulence or upheaval.'" *State v. Shtutman*, No. A-0812-15T2, 2017 WL 1400001, at *3 (N.J. Super. Ct. App. Div. Apr. 19, 2017) (quoting *Webster's New Collegiate Dictionary* 1258 (1977)). Tumult therefore "include[s] not only the crowd-focused definitions cited in *Stampone* but also 'violent agitation of mind or feelings' and 'a violent outburst.'" 2017 WL 1400001, at *3 (quoting *Webster's New Collegiate Dictionary* 1258 (1977)).

In *Stampone*, the Appellate Division reversed a disorderly conduct conviction in part because the State failed to prove "tumultuous conduct." 341 N.J. Super. at 255. There, an officer requested identification from the defendant, who was sitting in the driver's seat of his vehicle in a residential neighborhood, and the defendant initially refused. *Id.* at 250. After additional requests, the defendant retrieved his license from the trunk and returned to the driver's seat. *Id.* While the defendant was reaching for something on the passenger side, the officer opened the driver's side door, and the defendant slammed the door shut, almost hitting the officer's legs. *Id.* The officer pulled the defendant out of the vehicle, in response to which the defendant cursed at the officer and told him to let go of his arm. *Id.* The State charged the defendant with disorderly conduct and failing to produce a driver's license, but the Appellate Division reversed the defendant's disorderly conduct conviction in part because there was no evidence of "disorderly and violent movement, agitation or milling about

of a crowd." *Id.* at 255. Similarly, the exchange "had no capacity to cause public inconvenience, public annoyance or public alarm" because "[t]here was no indication that passers-by were noticing any of this or congregating or, indeed, that such persons were even present." *Id.* "Nor was there anything inherent in [the] defendant's conduct as to make it likely that his colloquy with [the officer] would cause public inconvenience, annoyance or alarm." *Id.*

The Appellate Division distinguished *Stampone* in upholding a disorderly conduct conviction in *Carter*. *See* 2012 WL 1605188, at *5. There, officers discovered three individuals punching and kicking another individual, who was trying to escape. *Id.* at *1. The officers alerted the attackers that they were under arrest and directed them to lie down, but the defendant fled. *Id.* When the officers pursued him, he kept running notwithstanding their commands to stop and their instructions that he was under arrest. *Id.* In upholding the defendant's disorderly conduct conviction, *Carter* concluded that unlike *Stampone*, where "the defendant did not engage in threats, fighting or violent behavior toward the officer," the defendant in *Carter* "was engaged in a brawl on a public street corner," *id.* at *5, thereby exhibiting violent agitation. The defendant acted recklessly because he "knew he was in a public place and knew that he was engaging in fighting behavior but completely disregarded the possibility that his conduct would cause public annoyance, inconvenience or harm." *Id.*

*Shtutman* similarly upheld a disorderly conduct conviction where the defendant physically intimidated an officer. Officers had reported to the defendant's home in response to an alert concerning an alleged theft, and while conducting a brief search for the missing item in the defendant's front yard, the defendant appeared intoxicated and yelled profanities at the officers. *Shtutman*, 2017 WL 1400001, at *1. When the officers asked the defendant to calm down, he moved from his front porch to the street where the officers were standing, yelling "fuck you, you fucking asshole" while waiving his middle fingers toward the officers, and he eventually came within five inches of an officer's face. *Id.* Neighbors emerged from their homes, and the officers arrested the

defendant shortly thereafter on charges for disorderly conduct. *Id. Shtutman* upheld the defendant's conviction because he "appeared intoxicated, acted in an agitated and aggressive manner, and engaged in a loud and profane-ridden tirade that lasted for minutes, and which was accompanied by the continuous flailing of his arms as he walked directly toward [the officer] until he was within inches of [the officer's] face." *Id.* at *3. That "conduct constituted 'a violent outburst' . . . and exhibited a 'violent agitation of mind or feelings,'" thereby "creating tumult." *Id.* (citing *Webster's New Collegiate Dictionary* 1258 (1977); *see also United Prop. Owners Ass'n of Belmar v. Borough of Belmar*, 343 N.J. Super. 1, 67 (App. Div. 2001)).

Here, based on Plaintiff's allegations, Defendants did not have probable cause to arrest him for disorderly conduct. There is a reasonable inference from Plaintiff's allegations that he was recording the encounter approximately 10-to-15 feet away from where the officers arrested Javier and that a group had already congregated in the same area. *See* Am. Compl. ¶¶ 11–13, 36. When Officer Maxwell first directed the group to stand further away, Plaintiff alleges that he and the other congregants complied, and when Officer Maxwell directed the group to an area even further away, Plaintiff allegedly informed Officer Maxwell that he was standing in front of his home. *See id.* ¶¶ 16–18. Officer Maxwell allegedly told Plaintiff he "d[idn't] care" but did not issue any further instructions. *Id.* ¶ 18. He then returned to the two detainees, at which point Plaintiff asked Javier the reason for his arrest. *Id.* ¶¶ 19–20. When Officer Maxwell retrieved the white bag that allegedly contained a controlled substance, Plaintiff told the officers that they could not pin the bag on Javier. *Id.* ¶¶ 23–26. Officer Maxwell then approached Plaintiff, who was allegedly standing on his front porch, and threatened to arrest him "for acting improper," to which Plaintiff replied that he was "just recording." *Id.* ¶¶ 31–33. Once Officer Maxwell returned to the detainees, at which point he was approximately 10-to-15 feet away, Plaintiff told Officer Maxwell he would take the video recording to his lawyer and said, "Fuck you." *Id.* ¶¶ 34–36. At that moment, Officers Maxwell and Bender

began sprinting toward Plaintiff. *Id.* ¶¶ 36–37.

Plaintiff's allegations suggest that he did not "[e]ngage[] in fighting or threatening, or in violent or tumultuous conduct." N.J.S.A. 2C:33-2(a)(1). Unlike in *Carter*, Plaintiff did not physically touch or threaten any officer or bystander. 2012 WL 1605188, at *5. And unlike in *Shtutman*, Plaintiff did not act "in an agitated and aggressive manner" or approach an officer, let alone bring himself within inches of any officer's face. 2017 WL 1400001, at *3. In fact, according to Plaintiff, the officers repeatedly approached him, not the other way around. Plaintiff alleges that he recorded the encounter from in front of his home, spoke to the officers and Javier sporadically, and shouted a profanity at Officer Maxwell. None of these actions "constitute[] 'a violent outburst' . . . [or] exhibit[] a 'violent agitation of mind or feelings.'" *Id.* (citation omitted). Moreover, although a small group gathered in the vicinity, *see Stampone*, 341 N.J. Super. at 255 (noting there was no indication any group congregated near the encounter), Plaintiff's allegations indicate that the group had already emerged when Plaintiff began recording the encounter. *See* Am. Compl. ¶¶ 10–13. And there is no indication that Plaintiff's conduct caused the group to grow or become agitated.

Nor did Plaintiff "[c]reate[] a hazardous or physically dangerous condition by any act which serves no legitimate purpose of the actor." N.J.S.A. 2C:33-2(a)(2). None of Plaintiff's actions were physically threatening, and there is no indication from the allegations that he created a hazardous environment by filming the events or speaking occasionally to those involved in the arrest. "An individual may not . . . be arrested for disorderly conduct solely because the arresting officer capriciously or in bad faith finds behavior annoying or distracting." *State v. Lashinsky*, 81 N.J. 1, 10 (1979). Moreover, the First Amendment protects the "right to record . . . police officers conducting official police activity in public areas." *Fields v. City of Phila.*, 862 F.3d 353, 360 (3d Cir. 2017). Plaintiff's presence at the scene therefore served a "legitimate purpose," negating an essential element of the offense. *See* N.J.S.A. 2C:33-2(a)(2); *see also Fields*, 862 F.3d at 359–60 (discussing

the value of "[b]ystander videos," including assistance in "address[ing] police misconduct and . . . protect[ing] civil rights") (quotations and citations omitted). Accordingly, based on Plaintiff's version of the events, Defendants did not have probable cause to arrest him for violating N.J.S.A. 2C:33-2(a).

Defendants' reliance on *Lashinsky* is unavailing. In that case, an officer had directed the plaintiff—a news photographer—and other bystanders to leave the scene of an automobile accident in order to clear a path for ambulances and due to concerns that gas leaking from the wrecked vehicle jeopardized the safety of those in the vicinity. *Id.* at 6–7. The plaintiff refused to leave and, after additional requests from the officer, he "engaged the trooper in a heated argument, lasting about three to four minutes," which distracted the officer—who at that time had no assistance—from his duties at the scene. *Id.* at 7. The officer then arrested the plaintiff for violating New Jersey's previous disorderly persons statute, which "which forbid[] an individual to obstruct, molest or interfere with another person who is lawfully in any place." *Id.* at 7, 9. In deciding whether the plaintiff's conduct violated the statute, *Lashinsky* held that the statute did not require "physical" interference. *Id.* at 10. Rather, "where an officer's instructions are obviously reasonable, in furtherance of his duties," an individual violates the statute "[i]f his refusal to respond results in an obstruction of the performance of the officer's proper tasks." *Id.* at 11. Under that standard, *Lashinsky* concluded that the officer's order to leave the scene was "clearly reasonable" in light of the need "to clear the area for additional ambulance and police assistance" and "[t]he possibility that fire might break out." *Id.* at 12. The plaintiff's conduct in refusing to comply was therefore "truly obstructive." *Id.* at 10, 12.

This case is distinguishable from *Lashinsky*. First, *Lashinsky* turned on a previous version of New Jersey's disorderly persons statute, and it is not clear that its interpretation applies with equal force to the current version, which contains different statutory language. *Compare Lashinsky*, 89 N.J. at 9 (noting that the previous version "forbid[] an individual to obstruct, molest or interfere with

another person who is lawfully in any place"), *with* N.J.S.A. 2C:33-2(a) (requiring that the individual either "[e]ngages in fighting or threatening, or in violent or tumultuous behavior," or "[c]reates a hazardous or physically dangerous condition by any act which serves no legitimate purpose of the actor"). Even assuming *Lashinsky* applies, this case is factually distinct. *Lashinsky* emphasized that the "question in each case calls for an assessment of defendant's actions in light of [a]ll the . . . circumstances [surrounding] the activity giving rise to a policeman's order, the reasonableness of that order itself and the defendant's reaction to it." *Id.* at 10. Unlike *Lashinsky*, where the plaintiff failed to comply with directions to leave the scene and "engaged the trooper in a heated argument[] lasting about three to four minutes," *see id.* at 7, the allegations here indicate that Plaintiff complied with the officers' directions to stand back from the area where they were executing an arrest and did not engage the officers in anything resembling a three-to-four-minute argument. *See, e.g.*, Am. Compl. ¶¶ 16, 21. Moreover, in *Lashinsky*, there was a need to create a path for ambulances and protect the crowd from a potential gas explosion. *See* 89 N.J. at 12. Here, the allegations do not evince any apparent safety risks to the officers or bystanders. Nor do they indicate that the bystanders blocked vehicles from arriving or otherwise impeded the investigation. Accordingly, based on the allegations, Plaintiff's conduct was not "truly obstructive" such that *Lashinsky* would require dismissal.

b)      Offensive Language

To convict a defendant for violating N.J.S.A. 2C:33-2(b), the State must prove that the defendant, (1) "in a public place,"  and (2) "with purpose to offend the sensibilities of a hearer or in reckless disregard of the probability of so doing," (3) "addresse[d] unreasonably loud and offensively course or abusive language, given the circumstances of the person present and the setting of the utterance, to any person present." N.J.S.A. 2C:33-2(b). Under longstanding precedent, the statute violates the First Amendment "when applied to language short of that which would incite the hearer

to immediate violence." *Halpin v. City of Camden*, Civ. No. 05-2088, 2007 WL 1521435, at *5 (D.N.J. May 21, 2007) (citing *In re H.D.*, 206 N.J. Super. 58, 61 (App. Div.1985)). "Such an authoritative construction of the statute by a state court 'is as binding [on a federal court] as though the precise words had been written into the [statute].'" *Johnson v. Campbell*, 332 F.3d 199, 211–12 (3d Cir. 2003) (addressing state court's construction of Pennsylvania's disorderly persons statute). Thus, to establish probable cause, Defendants must show that Plaintiff "(1) was in a public place[,] . . . (2) used language that, under the circumstances, risked immediate or present violence[,] and (3) was intentionally or recklessly indifferent to that risk." *Halpin*, 2007 WL 1521435, at *5.

Defendants are unable to show that, by shouting "Fuck you" at the officers, Plaintiff used "fighting words" that were "likely to cause an immediate breach of the peace" or immediately move bystanders to violence. *In re H.D.*, 206 N.J. Super. at 59–60 (quotations omitted). A group of bystanders had formed when Plaintiff began recording the encounter, *see* Am. Compl. ¶¶ 13–15, but nothing in the Amended Complaint suggests that the group became agitated or otherwise threatened to become violent. Defendants do not contend otherwise. Plaintiff also alleges that the group complied with the officers' directions to stand back from the area where they were executing the arrest. *See id.* ¶¶ 16, 21. And the profanities Plaintiff shouted at Officer Maxwell, by themselves, do not constitute "fighting words" that would provide probable cause for arrest under the disorderly persons statute. *See Campbell*, 332 F.3d at 214 ("[S]wear words, spoken to a police officer, do not provide probable cause for an arrest for disorderly conduct because the words, as a matter of law, are not 'fighting words.'"). Accordingly, Plaintiff has pleaded a viable claim that Defendants did not have probable cause to arrest him for violating N.J.S.A. 2C:33-2(b) based on the profanities he shouted immediately before his arrest.

### 2.    *Obstructing Administration of Law*

An individual violates New Jersey's obstruction statute if (1) "he purposely obstructs, impairs

or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function" (2) "by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act." N.J.S.A. 2C:29-1(a). The second element "requires that the individual either (1) commit an independent unlawful act or (2) physically interfere with a law enforcement officer's official duties." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 437 n.16 (D.N.J. 2011); *State v. Camillo*, 382 N.J. Super. 113, 117 (App. Div. 2005) (concluding that the prohibited conduct is "limit[ed] to '(1) violent or physical interference, [and] (2) other acts which are unlawful independently of the purpose to obstruct the government'") (quoting *Final Report of the New Jersey Criminal Law Revision Commission*, Vol. II, 1971, at 280). Here, Defendants contend that they had probable cause to arrest Plaintiff for obstruction because he ostensibly failed to follow their directions to move further away from the scene. *See* ECF No. 28-1 at 17.

Defendants' position is unavailing because, based on Plaintiff's allegations, he complied with Defendants' directions. When Officer Maxwell first directed the group to stand further away, Plaintiff alleges that the group complied and that Officer Maxwell then returned to the detainees. Am. Compl. ¶¶ 15–19.[5] Shortly thereafter, Plaintiff alleges that he objected when Officer Maxwell retrieved a bag of white substance from where Javier had been standing, apparently attributing the bag to Javier. *Id.* ¶¶ 24–26. Officer Maxwell allegedly approached Plaintiff again, telling him "to stand over there like I told you." *Id.* ¶¶ 28–29. Plaintiff responded that he was standing on his property, *id.* ¶ 30, and based on his allegations, he was already complying with Officer Maxwell's instructions to stand back from the scene. Officer Maxwell allegedly threatened to "get up there and lock [Plaintiff] up" for "acting

---

[5] Although I do not rely on the video at this stage, it appears to corroborate Plaintiff's allegations that he and the other bystanders moved further away from the scene following Officer Maxwell's initial directions.

improper," but he then returned to the vehicle where Javier was detained without issuing any further instructions. *Id.* ¶¶ 31–34. Based on Plaintiff's allegations, he did not fail to comply with any directions when Officer Maxwell approached him the second time. Plaintiff then allegedly told Officer Maxwell that he would take the video recording to his lawyer and shouted, "Fuck you." *Id.* ¶ 35. At that time, Plaintiff was allegedly still standing directly in front of his home, 10-to-15 feet away from the officers, and they immediately began running at Plaintiff. *Id.* ¶¶ 35–36. Telling the officers that he would share the video with his lawyers and shouting a profanity did not violate any directions the officers had issued.

Even assuming Plaintiff failed to perfectly comply with Defendants' directions to move further away from the scene, Defendants still are unable to establish probable cause on the facts alleged. Probable cause for obstruction requires physical interference. *See Camillo*, 382 N.J. Super. at 118. To the extent that Plaintiff stood several feet closer to the scene than the location where Officer Maxwell pointed, which is indiscernible from Plaintiff's allegations, Plaintiff nevertheless remained well removed from where the officers were arresting the detainees. *See* Am. Compl. ¶ 36 (alleging that Plaintiff was standing approximately 10-to-15 feet away). For similar reasons, sporadically speaking to Javier and the officers without physically interfering in their operations or preventing them from conducting an interrogation did not establish probable cause to arrest Plaintiff for obstruction. *See, e.g.*, *Camillo*, 382 N.J. Super. at 118 (concluding that merely refusing to provide information an officer requested, which may "have in a real sense obstructed the [officer] from preparing his [incident] report," did not qualify as obstruction absent any "physical interference").[6]

_____

[6] Probable cause for obstruction based on the "failure to perform a legal duty," as distinct from "physical interference" or another means of obstruction that is explicitly enumerated in N.J.S.A. 2C:29-1(a), "requires an affirmative act or some affirmative interference." *See State v. Fede*, 237 N.J. 138, 149–52 (2019) (holding that a resident's refusal to open a chain door latch in order to allow officers to enter home did not constitute "affirmative interference"). Here, Defendants do not raise the "failure to perform a legal duty" as a separate basis for probable cause, and there is no "affirmative

An individual's failure to "stand back" pursuant to an officer's directions may constitute physical interference in certain circumstances, *see State v. Hardester*, 2010 WL 3075523, at \*\*4–5 (N.J. Super. Ct. App. Div. Aug. 3, 2010), but no such circumstances arose here. In *Hardester*, the defendant physically interfered in an officer's investigation by disobeying the officer's repeated commands to stand back and physically standing in the officer's way as he attempted to question a witness, requiring the officer to repeatedly walk around the defendant. *Id.* at \*\*1–2, 4–5. Plaintiff, by contrast, remained approximately 10-to-15 feet away from the officers and only came closer when they approached him. Based on his allegations, Plaintiff therefore did not physically interfere with law enforcement.[7]

Defendants improperly rely on *State v. Brennan*, 344 N.J. Super. 136, 143 (App. Div. 2001), *certif. denied*, 171 N.J. 43 (2002), which discusses the obstruction statute but, as *Camillo* explained, does not apply in the circumstances at issue here. *See* 382 N.J. Super. at 118–19. *Brennan* observed that "if the police are performing a law enforcement function in an appropriate manner, *i.e.*, not with an excessive use of force, then a citizen is obligated to comply with the directions of the police," and that "[f]ailure to do so can result in a number of offenses, including obstruction, N.J.S.A. 2C:29–1 . . . ." 344 N.J. Super. at 143. But because "Brennan was charged with defiant trespass, a violation of N.J.S.A. 2C:18–3b," and not obstruction, "the court did not examine what type of conduct would

---

act" of interference evident from Plaintiff's allegations.

[7] *Hardester* recognized that "failure to leave the scene as ordered by a police officer" may constitute "physical interference" under N.J.S.A. 2C:29-1(a). 2010 WL 3075523, at \*4 (citing *State v. Hernandez*, 338 N.J. Super. 317, 323–24 (App.Div.2001)). However, even assuming—without deciding—that such an order would pass constitutional muster where an individual is exercising his First Amendment right to record police encounters "without getting in the officers' way" or otherwise "interfer[ing] with police activity," *see Fields*, 862 F.3d at 360, and where no other exigent circumstances are apparent, there are no allegations that Defendants instructed Plaintiff to leave the scene, here.

constitute criminal obstruction pursuant to N.J.S.A. 2C:29-1." *See Camillo*, 382 N.J. Super. at 118–19. *Brennan* therefore "did not address whether mere obstruction, or physical obstruction, was necessary for a conviction under N.J.S.A. 2C:29-1." *Id.* For that reason, *Camillo* concluded that *Brennan* does not control the outcome in an obstruction case where the State is unable to establish physical interference. *See id.*

Accordingly, based on Plaintiff's allegations, Defendants did not have probable cause to arrest Plaintiff for obstruction.[8]

### 3.    *Resisting Arrest*

A person is guilty of resisting arrest as a fourth-degree crime "if he, by flight, purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest." N.J.S.A. 2C:29-2(a)(2). Resisting arrest is a third-degree crime if, in committing the base offense, a person "[u]ses or threatens to use physical force or violence against the law enforcement officer or another," or "[u]ses any other means to create a substantial risk of causing physical injury to the public servant or another." N.J.S.A. 2C:29-2(a)(3). That an arrest is otherwise unlawful is not a defense, "provided [that the officer effecting the arrest] was acting under color of his official authority and . . . announces his intention to arrest prior to the resistance." N.J.S.A. 2C:29-2(a). An officer is "acting under color

---

[8] Plaintiff was also charged with resisting arrest, and N.J.S.A. 2C:29-1 prohibits obstruction "by means of flight." However, "probable cause for offenses that occurred either during or after the arrest cannot provide the requisite probable cause as to justify the initial arrest." *Trafton*, 799 F. Supp. 2d at 436 (citing *Groman v. Township of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995)). Based on Plaintiff's allegations, Defendants began running at Plaintiff immediately after he shouted a profanity and arrested Plaintiff when they caught him. *See* Am. Compl. ¶¶ 35–40. Thus, based on the allegations, to the extent that Plaintiff fled from the officers, he did so after they had initiated the arrest. His flight therefore could not have provided probable cause for his arrest initially. *See Trafton*, 799 F. Supp. 2d at 436; *Smart v. Capelli*, No. 07-955, 2008 WL 2478378, at *6 n.5 (D.N.J. June 18, 2008) ("Although Plaintiff was also subsequently charged with resisting arrest and obstructing justice, because those charges relate to alleged conduct during the arrest, it could not have provided probable cause for the arrest").

of his official authority," *id.*, when he is "act[ing] in an objective good faith manner," which requires "honesty in belief or purpose and faithfulness to one's duty or obligation." *State v. Whaley*, 2011 WL 1631116, at *4 (N.J. Super. Ct. App. Div. May 2, 2011) (citing *State v. Crawley*, 187 N.J. 440 (2006), *cert. denied*, 549 U.S. 1078 (2006)).

Here, Defendants do not explicitly rely on the resisting arrest charge as a basis for probable cause, *see, e.g.*, ECF No. 28-1 at 14 (noting officers had probable cause to arrest Plaintiff for "being disorderly [and] defying police orders to move to a different location"), but even if they did, based on Plaintiff's allegations, they are unable to establish probable cause for resisting arrest. For the reasons discussed *supra*, Defendants did not have probable cause to arrest Plaintiff for his actions before Officers Maxwell and Bender began running at him. Although "[i]t is not a defense . . . that the law enforcement officer was acting unlawfully in making the arrest," that is true only where the "officer announces his intention to arrest prior to the resistance." N.J.S.A. 2C:29-2. Where an arrest is otherwise unlawful, as I have concluded here, the State must prove that the officers announced their intention to arrest the subject. *State v. Kane*, 303 N.J. Super. 167, 182 (App. Div. 1997) (reversing conviction under N.J.S.A. 2C:29-2(a) where state failed to prove officers announced intention to arrest defendant when the arrest was otherwise unlawful); *Veneziale v. Deichman*, Civ. No. 14-6015, 2018 WL 3122066, at **4–5 (D.N.J. June 25, 2018) (recognizing that failure to announce is defense to violation of N.J.S.A. 2C:29-2(a) where arrest was otherwise unlawful). Here, there is no indication that the officers announced their intention to arrest Plaintiff at any point between when they initiated the arrest and ultimately subdued him.[9] Accordingly, based on the allegations

---

[9] Plaintiff does allege that, earlier in the encounter, Officer Maxwell threatened to "get up there and lock [Plaintiff] up" while Plaintiff was recording from his porch. *See* Am. Compl. ¶ 31. But there is no indication that Officer Maxwell's threat constituted an announcement of his intention to arrest Plaintiff, as the arrest occurred well after the threat.

before me, there was no probable cause to arrest Plaintiff for violating N.J.S.A. 2C:29-2(a).

**B.      Count One: Retaliatory Arrest**

Defendants move to dismiss the First Amendment retaliation claim on two grounds. First, the officers contend that they had probable cause to arrest Plaintiff based on his alleged interference, foreclosing his First Amendment claim. *See* ECF No. 28-1 at 15–17 (citing *Whaley*, 2012 WL 2340308, at *13). Second, Defendants maintain that even if Plaintiff has stated a claim for First Amendment retaliation, qualified immunity bars his claim. *See* ECF No. 28-1 at 18–21.

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To establish whether qualified immunity applies, courts must determine (1) whether the defendant violated a constitutional right and, if so, (2) whether "the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, I will first address whether Plaintiff has stated a claim for a violation of his First Amendment rights, and I will then address whether those rights were clearly established.

*1.      First Amendment Retaliation Claim*

"[R]etaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 1990). To state a First Amendment retaliation claim, a plaintiff must plausibly allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary

firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Zimmerlink v. Zapotsky*, 539 F. App'x 45, 48 (3d Cir. 2013) (citing *Thomas v. Independence Twp.,* 463 F.3d 285, 296 (3d Cir. 2006)). There is no meaningful dispute that arresting Plaintiff constitutes conduct that is "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Id.*; *see also Thurairajah v. City of Fort Smith, Ark.*, 925 F.3d 979, 985 (8th Cir. 2019). Rather, this dispute turns on whether Plaintiff adequately alleges protected speech and causation. In their Motion, Defendants assume Plaintiff's First Amendment retaliation claim is premised on his right to record officers by video in public. *See* ECF No. 28-1 at 18–21. However, Plaintiff clarified in his Opposition that Count One alleges retaliation against his use of a profanity immediately before his arrest. *See* ECF No. 30 at 8–9. I will therefore only address Plaintiff's claim under the theory identified in his Opposition.

"[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers," *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987), including speech that is "disputatious, emotionally charged, or profane." *Campbell*, 332 F.3d at 213. Under the "fighting words" doctrine, "freedom of speech, though not absolute, is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949). "'[P]rofane' words . . . alone, unaccompanied by any evidence of violent arousal, are not 'fighting words,' and are therefore protected speech." *Campbell*, 332 F.3d at 212 (citing *Cohen v. California*, 403 U.S. 15, 20 (1971)). Rather, to qualify as "fighting words," speech "must be nothing less than 'an invitation to exchange fisticuffs.'" *Campbell*, 332 F.3d at 212 (quoting *Texas v. Johnson*, 491 U.S. 397, 408 (1989)). And "the Supreme Court has suggested that the 'fighting words' exception 'might require a narrower application in cases involving words addressed to a police officer, because a properly trained officer may reasonably be expected to

exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" *Campbell*, 332 F.3d at 212 (quoting *Hill*, 482 U.S. at 462).

Plaintiff's speech to the officers is protected under the First Amendment. When Plaintiff shouted a profanity at Officer Maxwell, there is no indication that he intended to—or in fact did—cause any "violent arousal." *Campbell*, 332 F.3d at 212. Indeed, Plaintiff's allegations indicate that the officers "began sprinting after [him]," *see* Am. Compl. ¶¶ 35–38, not that any bystanders became agitated. The profanity therefore does not qualify as "fighting words" and is protected speech. *See Campbell*, 332 F.3d at 212–15 (holding that saying "son of a bitch" in response to officer's request for identification without evidence that the words were likely to provoke violence did not constitute "fighting words" and was protected speech); *United States v. Poocha*, 259 F.3d 1077, 1079–82 (9th Cir. 2001) (holding that yelling "Fuck you" at a park ranger in response to orders that the plaintiff and a surrounding crowd disperse from the scene of an arrest did not constitute fighting words); *Johnson v. Bradford*, Civ. No. 16-205, 2017 WL 7163940, at **3–4 (W.D. Pa. Nov. 30, 2017) (concluding that calling an officer a "mother fucking faggot" when the officer instructed plaintiff to return to his truck, without more, is protected speech). Neither does Plaintiff's speech or conduct before he shouted the profanity, taken in context, indicate that the profanity qualifies as "fighting words," as there is no indication that his prior speech or conduct caused anyone at the scene "to become angry or provoke anyone to fight." *Campbell*, 332 F.3d at 213; *cf. Bradford*, 2017 WL 7163940, at **3–4 (concluding that plaintiff's invitation to fight immediately after calling officer a "mother fucking faggot" qualified as fighting words and therefore unprotected speech). As alleged, Plaintiff never made violent threats or urged any anyone else to engage in violence. Accordingly, his alleged speech during the encounter is protected.

Plaintiff also plausibly alleges a "causal link between the constitutionally protected conduct and the retaliatory action." *Zimmerlink*, 539 F. App'x at 48. "The required link is 'but-for' causation,"

*Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017), and "[o]ne method of proving a causal link, applicable here, is 'unusually suggestive temporal proximity,'" *Mirabella*, 853 F.3d at 652 (quoting *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). Notably, the officers did not attempt to arrest Plaintiff when, according to Defendants, he ostensibly interfered with their operations during the preceding minutes of the encounter. Rather, according to Plaintiff's allegations, the officers began running at him in direct response to the profanity he shouted. *See* Am. Compl. ¶¶ 35–37.[10] Plaintiff therefore adequately alleges that the profanity itself was at least a "substantial factor" in Defendants' decision to place him under arrest.

Defendants argue that Plaintiff's First Amendment retaliation claim fails because, they contend, there was probable cause to arrest Plaintiff for disorderly conduct and "obstructing the investigation." *See* ECF No. 28-1 at 14–17. A "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019). "Absent such a showing, a retaliatory arrest claim fails." *Id.* at 1725. However, "if the plaintiff establishes the absence of probable cause, then 'the . . . test [established in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977),] governs: The plaintiff must show that the retaliation was a substantial or motivating factor behind the [arrest], and, if that showing is made, the defendant can prevail only by showing that the [arrest] would have been initiated without respect to retaliation.'" *Nieves*, 139 S. Ct. at 1725 (quoting *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1952–53 (2018)). Here, taking Plaintiff's allegations as true, he plausibly alleges that Defendants did not have probable cause for his arrest. Accordingly, to state a claim, Plaintiff must plausibly allege a causal connection between his arrest and the protected speech. *See Nieves*, 139 S.

---

[10] Although I need not rely on it here, the video also appears to corroborate Plaintiff's allegations that the officers began running at him immediately after he shouted a profanity at Officer Maxwell.

Ct. at 1725. For the reasons set forth *supra*, he has done so here.

Defendants also cite to *King v. Ambs*, 519 F.3d 607 (6th Cir. 2008), in which the plaintiff similarly asserted a First Amendment retaliation claim following his arrest for obstruction. There, an officer arrested the plaintiff after he continued "speak[ing] over" the officer while he attempted to interrogate a third party. *Id.* at 609. The plaintiff was charged with obstruction under a local ordinance that did not contain a "'physical obstruction' limitation," such that his obstructive speech fell within the statute. *See id.* at 611. Alternatively, the court concluded that even if the ordinance required physical obstruction, the plaintiff's "conduct in persisting to interfere with [the officer's] investigation amounted to a physical interruption of the questioning." *Id.* Under either interpretation, the court concluded that officers had probable cause to arrest the plaintiff for obstruction. *See id.* at 611–12. The court also rejected the plaintiff's First Amendment retaliation claim because it concluded that he "was arrested for the act of disrupting the officer's investigation, and not for the content of his speech." *Id.* at 615.

This case is readily distinguishable. Whereas *Ambs* interpreted the relevant ordinance not to require "physical obstruction," *see id.* at 611, New Jersey's obstruction statute requires physical interference. *See Camillo*, 382 N.J. Super. at 118. Nor do the allegations here indicate that Plaintiff's sporadic questions and comments interrupted an interrogation or any other aspect of the investigation such that they amounted to physical obstruction. *Cf. Ambs*, 519 F.3d at 611. Likewise, Plaintiff plausibly alleges that the officers did not have probable cause for his arrest, based on physical interference or otherwise. And unlike in *Ambs*, where the court concluded that no factual dispute remained concerning the officers' motivations for arresting the plaintiff, *see id.* at 615, Plaintiff plausibly alleges here that the officers arrested him in retaliation against his protected speech. Accordingly, based on the facts alleged, I do not find *Ambs* to be persuasive authority.

Plaintiff has plausibly alleged that Defendants violated his First Amendment right to freedom

of speech.

2.     *Qualified Immunity*

Defendants nevertheless maintain that qualified immunity bars Plaintiff's First Amendment

retaliation claim because they did not violate any clearly established right. They argue that Plaintiff

improperly defines the right at issue as one to "curs[e] and heckl[e]" officers when, according to

Defendants, "Plaintiff was being belligerent and disruptive to an active police investigation," which

is not "clearly established" as protected speech under the First Amendment. *See* ECF No. 31 at 29. I

disagree. Plaintiff plausibly alleges that Defendants violated his clearly established right to voice

criticism against police officers in public, including through the use of profanities.

A right is "clearly established" when, "at the time of the challenged conduct, '[t]he contours

of [the] right [are] sufficiently clear' that every 'reasonable official would [have understood] that

what he is doing violates that right.'" *Al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483

U.S. 635, 640 (1987)). There need not be a case that is "directly on point," *Al-Kidd*, 563 U.S. at 741,

but "'existing precedent must have placed the statutory or constitutional question' confronted by the

official 'beyond debate.'" *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). "[T]he legal principle"

must also "clearly prohibit the officer's conduct in the particular circumstances before him," which

"requires a high 'degree of specificity.'" *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)

(quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)). Courts "must not 'define clearly established law

at a high level of generality, since doing so avoids the crucial question whether the official acted

reasonably in the particular circumstances that he or she faced.'" *Wesby*, 138 S. Ct. at 590 (quoting

*Plumhoff*, 572 U.S. at 779).

It is clearly established in the Third Circuit and New Jersey state courts that the First

Amendment protects "disputatious, emotionally charged, [or] profane" speech directed at a police

officer so long as that speech does not "fall[] into the narrow category of 'fighting words.'" *See*

*Campbell*, 332 F.3d at 213; *In re H.D.*, 206 N.J. Super. at 61. Indeed, a decision in this district observed in 2009 that the right to use profane language against police officers "was clearly established more than 20 years ago." *See Halpin v. Gibson*, Civ. No. 05-2088, 2009 WL 3271590, at *3 (D.N.J. Oct. 9, 2009) (citing *In re H.D.*, 206 N.J. Super. at 61); *see also Murphy v. Palmer*, 2017 WL 2364195, at *11 (D.N.J. May 31, 2017) (citing *Campbell*, 332 F.3d at 213) ("[U]nder the First Amendment, a person can direct curse words at a police officer without fear of reprisal.").

Defendants' position that Plaintiff draws the right at issue too narrowly is unavailing. They claim that "Plaintiff's actions went well beyond cursing and heckling" and that Plaintiff "was being belligerent and disruptive." ECF No. 31 at 29. But short of fighting words, the First Amendment protects speech that "interrupt[s] an officer," even when the speech is belligerent or laden with profanities. *See Hill*, 482 U.S. at 462–63 (quotations and citations omitted). Even assuming speech that "amount[s] to a physical interruption of" an officer's interrogation is unprotected in certain circumstances, *see Ambs*, 519 F.3d at 611 (citing *Hill*, 482 U.S. at 462 n.11), based on the allegations here, Plaintiff's speech fell far short of that threshold. There is no indication that Plaintiff's comments interrupted an interrogation or prevented the officers from executing their duties. *Cf. id.* at 614 (finding that the plaintiff's "exhortations" to a third party not to comply with police orders and his repeated interruption of a police interrogation "plainly obstructed ongoing police activity"). And for the reasons discussed *supra*, based on Plaintiff's allegations, Defendants did not otherwise have probable cause to arrest him for disorderly conduct or obstruction, as he allegedly complied with their directions to stand back from the scene and his behavior was not violent or tumultuous. Thus, the relevant factual circumstances are that Defendants arrested Plaintiff immediately after he shouted a profanity at Officer Maxwell, *see* Am. Compl. ¶¶ 35–40, such that Plaintiff's speech "immediately precipitated his arrest." *See Campbell*, 332 F.3d at 213. Absent any demonstration that Plaintiff's speech amounted to "fighting words," freedom from arrest in these circumstances is a clearly

established right under the First Amendment. *See id.* (holding that where plaintiff's behavior was not "threatening or tumultuous" and his profane speech to an officer "immediately precipitated his arrest," there was no probable cause to arrest the plaintiff for disorderly conduct because his speech was protected); *Halpin*, 2009 WL 3271590, at **2–3 (citing *In re H.D.*, 206 N.J. Super. at 61).[11]

Precedent from outside the Third Circuit further demonstrates that the right at issue here is clearly established. For example, in *Hoyland v. McMenomy*, 869 F.3d 644 (8th Cir. 2017), the court similarly denied qualified immunity on a First Amendment retaliation claim where the defendants sought to construe the plaintiff's conduct as obstruction. There, officers were executing a vehicle stop and arrest involving the plaintiff's wife in front of the plaintiff's home. *Id.* at 649–50. The plaintiff came outside to record the encounter by video and inform the officers that his wife was handicapped. *Id.* Officers instructed the plaintiff to go back inside, but he did not comply and instead shouted criticism at the officers. *See id.* (noting that the plaintiff "shouted, 'You are in my yard!' and 'What is this, a DWI stop, and you guys are doing this? Are you kidding me?'"). The officers instructed the plaintiff to go inside again, and when the plaintiff again failed to comply, he was arrested. *Id.* at 650. In fact, there was evidence that the plaintiff "refused seven times to comply with police commands." *Id.* at 659 (Colloton, J., dissenting). Nevertheless, *Hoyland* held that the officers lacked probable cause to arrest the plaintiff based on his failure to comply with their directions or his verbal interference, which did not have "the effect of physically obstructing officers in the performance of their duties." *Id.* at 654–55. The court also denied summary judgment on the plaintiff's First Amendment retaliation claim, concluding that the plaintiff's verbal criticism was

---

[11] Defendants do not raise any argument here that qualified immunity nevertheless applies because they "reasonably but mistakenly conclude[d] that probable cause [wa]s present." *Anderson*, 483 U.S. at 641. And for the reasons discussed *supra* in connection with the false arrest claim, based on Plaintiff's allegations, I do not reach such a conclusion, either.

protected and that the temporal proximity between his speech and arrest established a jury question as to causation. *See id.* at 656–57. And because there was no probable cause to arrest the plaintiff for obstruction, the court denied qualified immunity on the plaintiff's First Amendment claim. *Id.* at 657.

The allegations here are similar to the events in *Hoyland*. Like in *Hoyland*, Plaintiff was recording an arrest by video from in front of his home, at a distance from the encounter, and he made sporadic comments that did not "obstruct[] [the] officers in the performance of their official duties." *See id.* at 655; Am. Compl. ¶¶ 10, 12, 17, 20, 24, 30. Further, in *Hoyland*, the plaintiff unquestionably disobeyed the officers' orders at least twice, but the court nevertheless found an absence of probable cause to arrest the plaintiff for obstruction because "[h]e did not physically obstruct the officers or engage in verbal conduct that physically obstructed the officers." *Hoyland*, 869 F.3d at 654. Here, according to Plaintiff's allegations, he obeyed the officers' directions to stand back from the scene. *See, e.g.*, Am. Compl. ¶¶ 16, 21. And like in *Hoyland*, the allegations here show that the officers arrested Plaintiff in direct response to his verbal criticism. *See Hoyland*, 869 F.3d at 657; Am. Compl. ¶¶ 35–40. The facts in *Hoyland* are not identical to those at issue here, primarily because no bystanders had gathered. *See* 869 F.3d at 656. But the case need not be "directly on point," *Al-Kidd*, 563 U.S. at 741, and based on Plaintiff's allegations, this factual difference is not sufficient to distinguish *Hoyland* given that the bystanders here allegedly were not agitated or otherwise interfering with police operations. *Hoyland* therefore further supports the conclusion that, based on Plaintiff's allegations, Defendants violated a clearly established First Amendment right.

Accordingly, Defendants' Motion to Dismiss Count One based on qualified immunity is denied.

### C.    Count Two: Equal Protection

Count Two alleges that Defendants violated the Equal Protection Clause by discriminating against Plaintiff in response to his exercise of the right to free speech under the First Amendment.

*See* Am. Compl. ¶ 59. Defendants move to dismiss Count Two on grounds that Plaintiff premises his equal protection claim on the First Amendment retaliation claim in Count One, and because Defendants maintain that probable cause to arrest Plaintiff negates his First Amendment claim, they contend that probable cause also negates the equal protection claim. *See* ECF No. 28-1 at 21. Those are the only grounds upon which Defendants move to dismiss Count Two. In his Opposition, Plaintiff contends that because the grounds upon which Defendants move to dismiss Count One are invalid, so too are the grounds upon which Defendants move to dismiss Count Two. *See* ECF No. 30 at 9 n.2. In their Reply, Defendants urge the Court to dismiss Count Two because, according to Defendants, there is no clearly established right to record officers by video or "to be belligerent and disruptive" while officers "are conducting an investigation and arrest." *See* ECF No. 31 at 27–30. Although they do not say so explicitly, Defendants imply—as they did in their Motion—that the Court must dismiss Plaintiff's equal protection claim in Count Two because it is premised on the First Amendment violation Plaintiff asserts in Count One.

Because I conclude, based on the allegations in the Complaint, that Defendants did not have probable cause to arrest Plaintiff, and that Plaintiff plausibly alleged Defendants violated a clearly established right under Count One, Defendants' Motion is denied with respect to Plaintiff's equal protection claim in Count Two.[12]

### D.    Count Four: Excessive Force

---

[12] Notably, Plaintiff has not alleged with any specificity the class of individuals against whom Defendants discriminated. Nor does he provide any allegations supporting the inference that the officers "'singled [him] out . . .' such that 'the specter of arbitrary classification is fairly raised,'" as is required to state a claim under a "class of one" theory. *See Bag of Holdings v. City of Philadelphia*, 682 F. App'x 94, 98 (3d Cir. 2017) (quoting *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 602–04 (2008)). Nevertheless, because Defendants do not move to dismiss Count Two on the merits, I do not address them, here.

Claims that an officer used excessive force in executing an arrest fall within the Fourth Amendment right to be free from unreasonable searches and seizures. *See Jefferson v. Lias*, 21 F.4th 74, 78 (3d Cir. 2021) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "'To prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances.'" *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 182–83 (3d Cir. 2011)). Here, there is no question that Defendants seized Plaintiff. The only remaining question is whether the force they used was reasonable under the circumstances.

Determining whether force was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. Courts must determine "whether under the totality of the circumstances, 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2005) (quoting *Graham*, 490 U.S. at 397). Relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Courts may also "assess the physical injury to the plaintiff, 'the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.'" *El*, 975 F.3d at 336 (quoting *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199, 209–11 (3d Cir. 2007)). "Because the inquiry is so fact-dependent, . . . '[t]he reasonableness of the use

of force is normally an issue for the jury.'" *Jefferson*, 21 F.4th at 79 (quoting *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004)).

Plaintiff plausibly alleges that Defendants used excessive force during his arrest. The "severity" of the offenses for which Defendants arrested Plaintiff is "minimal." *See, e.g.*, *Castellani v. City of Atlantic City*, Civ. No. 13-5848, 2017 WL 3112820, at *8 (D.N.J. July 21, 2017) (concluding that "disorderly conduct and public intoxication" are non-severe offenses under the *Graham* factors). Likewise, there is no indication that Plaintiff "pose[d] an immediate threat to the safety of the officers or others." *Graham*, 490 U.S. at 396. According to Plaintiff's allegations, he and the other bystanders complied with the officers' directions to stand back from the area where law enforcement officials were arresting Javier and the other detainee. *See* Am. Compl. ¶¶ 16, 21. Plaintiff spoke to Javier and the officers sporadically during the encounter, but there is no indication that Plaintiff or other bystanders threatened violence. The Amended Complaint also belies Defendants' suggestion that Plaintiff posed "an immediate threat to the officers by enticing the crowd to gather around the police," ECF No. 31 at 31, as Plaintiff alleges that a group formed before he began interacting with the officers, and there are no allegations that the crowd grew or became agitated thereafter.

While Plaintiff was charged with resisting arrest, *see Graham*, 490 U.S. at 396, punching Plaintiff was not reasonable under the circumstances. Even assuming it may be reasonable in certain circumstances to punch an individual who is resisting arrest in order to stop his flight, Plaintiff's allegations indicate Officer Maxwell began punching him after he had been subdued, *see* Am. Compl. ¶¶ 36–39, and "[t]he gratuitous use of force against an arrestee who has already been restrained violates the Fourth Amendment." *Helms v. Ryder*, Civ. No. 14-2470, 2017 WL 1356323, at *6 (D.N.J. Apr. 12, 2017) (collecting cases). The cases cited in *Helms* generally concern force applied after the defendant had been handcuffed, *see, e.g.*, *Robinson v. Andrews*, Civ. No. 11-252,

2014 WL 4662237, at *9 (D.N.J. Sept. 18, 2014) (denying defendants' motion for summary judgment on excessive force claim where officers kicked and punched plaintiff after placing him in handcuffs), whereas Plaintiff's allegations do not specify whether he was in handcuffs when Officer Maxwell began punching him. But even if he was not, Plaintiff alleges that Officer Bender had knocked him to the ground before the punches began, *see* Am. Compl. ¶¶ 38–39, and there is no indication that Plaintiff was resisting the officers once they reached him. Accordingly, Plaintiff plausibly alleges that Officer Maxwell used unreasonable force by gratuitously punching him while he was restrained on the ground.

Other factors further support that conclusion. Plaintiff alleges that he "was so heavily bloodied and bruised" that the supervising sergeant directed officers to take Plaintiff to the hospital when he arrived at the police station. *Id.* ¶ 41. These "physical injur[ies]" bolster Plaintiff's claim that Defendants used excessive force. *See El*, 975 F.3d at 336. There is also no indication that Plaintiff was armed, *see id.*, and Defendants do not claim that they suspected Plaintiff was carrying a weapon. Although a group of bystanders had formed in the area, the group remained at least 10-to-15 feet away from the scene of the arrest, and there is no indication that the officers were required to restrain any bystander other than Plaintiff. *Cf. id.* (noting that "the number of persons with whom the police officers must contend at one time" is relevant in assessing reasonableness). In any event, the presence of bystanders is hardly relevant to whether Officer Maxwell used reasonable force in punching Plaintiff after he was on the ground. Accordingly, the Amended Complaint sufficiently alleges that the force Officer Maxwell used against Plaintiff was unreasonable under the circumstances.

### E.   Count Five: Failure to Intervene

"[A] police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force." *Smith v. Messenger*, 293 F.3d 641, 650 (3d Cir. 2002). "However,

an officer is only liable if there is a realistic and reasonable opportunity to intervene," *id.*, and "the duration of the incident is key to determining whether there was a reasonable opportunity." *El*, 975 F.3d at 335. An officer likely has a reasonable opportunity to intervene "where the allegedly excessive force lasts about fifteen minutes," *id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995), "or where the event unfolds in multiple stages," *id.* (citing *Smith*, 293 F.3d at 644, 650). But "where an incident is momentary, its 'brevity' may 'defeat[ ] [a] . . . failure-to-intervene claim." *Id.* (quoting *Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018)).

*El* reversed a district court's denial of summary judgment against a failure-to-intervene claim based on the brevity of the encounter. 975 F.3d at 335–36. A video recording showed an officer slam a defendant against a wall before pressing him down onto the pavement. *Id.* at 332, 335. The plaintiff claimed that another officer, who was standing within several feet of her counterparts, failed to intervene. *See id.* at 335. However, because the incident lasted "roughly five seconds," the Court held "no reasonable jury could conclude that [the officer] had a realistic and reasonable opportunity to" prevent her counterpart from slamming the plaintiff on the ground. *Id.* at 335–36.

Brevity may not always require dismissal where the circumstances indicate that the defendant had a reasonable opportunity to intervene. In *D'Arrigo v. Gloucester City*, a court within this district denied summary judgment against a failure-to-intervene claim where an officer failed to prevent several other officers from using excessive force even though the encounter happened "very quickly." Civ. No. 04-5967, 2007 WL 1755970, at *6 (D.N.J. June 19, 2007). A group of officers had rushed toward the plaintiff as the defendant was leading him toward a prison cell, ramming him up against a wall and punching him multiple times. *Id.* There was a dispute as to whether the defendant had already handcuffed the plaintiff or whether he was in the process of doing so. *See id.* Nevertheless, *D'Arrigo* held that once the other officers had "crashed on top of [the

[p]laintiff," subduing him, "[a] reasonable jury could find that [the defendant] had an opportunity to prevent the assault from the officer who repeatedly punched [the] [p]laintiff." *Id.*

Here, Plaintiff fails to plausibly allege that Officer Bender had a reasonable opportunity to prevent Officer Maxwell from punching him. The Amended Complaint does not specify the amount of time that elapsed between when Officer Bender knocked Plaintiff down and when Officer Maxwell landed his final punch. Because "the duration of the incident is key to determining whether there was a reasonable opportunity," *El*, 975 F.3d at 335, Plaintiff has not plausibly alleged that Officer Bender had sufficient time to intervene. Moreover, *D'Arrigo* denied summary judgment on the failure-to-warn claim because the facts indicated that other officers had subdued the plaintiff, providing an opportunity for the defendant—who was by then unoccupied—to prevent their use of excessive force. *See* 2007 WL 1755970, at *6. By contrast, other than alleging that Officer Bender was close to Officer Maxwell, Plaintiff does not allege any other facts plausibly showing that Officer Bender was able to intervene. Accordingly, Plaintiff's failure-to-intervene claim is dismissed without prejudice.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion is **GRANTED** in part and **DENIED** in part. The Motion is denied with respect to Counts through Four, and the Motion is granted with respect to Count Five, which is dismissed without prejudice. Plaintiff is given fourteen (14) days to amend Count Five if he can remedy the omissions noted above. An appropriate form of Order is filed herewith.


Date: April 26, 2022                                    /s/ Freda L. Wolfson
                                                        Hon. Freda L. Wolfson
                                                        U.S. Chief District Judge